UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| DARRYL T. JONES | NO. 24-00016-BAJ-EWD |

### RULING AND ORDER

Before the Court is Defendant Darryl Jones' **Motion To Dismiss Indictment and to Stay the Proceedings (Doc. 23, the "Motion"),** which raises facial and as-applied constitutional challenges under 18 U.S.C. § 922(g)(1). The United States opposes the Motion. (Doc. 38). For the following reasons, Defendant's Motion will be **DENIED**.

### I.  PROCEDURAL HISTORY

On February 22, 2024, the Grand Jury for the Middle District of Louisiana handed down a one-count Indictment against Defendant Darryl T. Jones, which charges Defendant with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 1).

The Indictment does not describe the details of Defendant's prior felony conviction. (*Id.*). However, both the Defendant and the United States provided information regarding three prior felony convictions (Doc. 23-1 at 2; Doc. 38 at 2). First, Defendant was convicted of aggravated criminal damage to property, in violation of La. R.S. 14:55, on April 9, 2013, in the 19th Judicial District Court. (Doc. 38 at 2). Defendant was also convicted twice of possession of oxycodone, once in 2019

and again in 2021. (*Id.*). The Government identifies the aggravated criminal damage to property conviction as the underlying felony conviction in this case. (Doc. 38 at 6).

On April 17, 2024, the Court stayed this case pending a ruling in *United States v. Rahimi*, 602 U.S. 680 (2024). (Doc. 25).

On October 18, 2024, Defendant filed a motion to lift the stay and set a briefing schedule regarding the impact of the Fifth Circuit's more recent decision, *United States v. Diaz*, on Defendant's Motion. (Doc. 31). The Court granted Defendants' motion and lifted the stay. (Doc. 35) The Government filed an Opposition to Defendant's Motion to Dismiss. (Doc. 38). Defendant filed a Response. (Doc. 47).

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).

Here, Defendant pursues "as applied" and facial challenges to § 922(g)(1). (Doc. 23). "The distinction between as applied and facial challenges is sometimes hazy." *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022) (citation omitted). Generally, however, in an as-applied challenge, the Court assesses whether a law with some permissible uses "is nonetheless unconstitutional as applied to [the defendant's] activity." *Spence v. Washington*, 418 U.S. 405, 414 (1974) (reversing defendant's criminal conviction); *see Street v. New York*, 394 U.S. 576, 594 (1969) (same). By contrast, in a facial challenge, the Court's analysis is considerably

2

broader in scope, assessing whether a law "could ever be applied in a valid manner." *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984).

## III. DISCUSSION

Since the filing of Defendant's Motion, the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit have provided additional guidance on the constitutionality of 18 U.S.C. § 922(g)(1). The Court discusses such developments below, then analyzes the impact of this jurisprudence on Defendant's Motion.

### A. Second Amendment Jurisprudence.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. These twenty-seven words, largely unquestioned since their first utterance, *see* Danny Y. Li, ANTISUBORDINATING THE SECOND AMENDMENT, 132 Yale L.J. 1821, 1846 (2023), have caused considerable consternation among our Nation's courts in the past two decades. The results of this attention have been dramatic. The Second Amendment was reinterpreted to provide an individual right to firearms, *D.C. v. Heller*, 554 U.S. 570, 595 (2008), the Supreme Court declared that the Second Amendment is no longer a so-called "second-class right," *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 70 (2022), and existing constitutional tests for firearm regulations were upended in favor of

3

extended dives into distant history in search of metaphorical ancestors to present-day legislation. *See United States v. Rahimi*, 602 U.S. 680, 697–701 (2024).

It is from this backdrop that the Court arrives at its current marching orders. When a challenge to firearm legislation is lodged, the Court is required to conduct a two-step analysis: (1) ascertain whether the "Second Amendment's plain text covers [the] individual's conduct," and (2) if the Second Amendment covers the relevant conduct, determine whether the United States has satisfied its burden of showing that "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. 1, 24 (2022). In this process, the Court must not conflate the requirement for a "historical analogue" with a necessity for a "historical twin," or an identical regulation from our Nation's early history. *Rahimi*, 602 U.S. at 701.

The Fifth Circuit has also provided guidance to lower courts on navigating the post-*Bruen* landscape. In *United States v. Diaz*, 116 F.4th 458, 471 (5th Cir. 2024), *cert. denied*, No. 24-6625, 2025 WL 1727419 (U.S. June 23, 2025), the Fifth Circuit held § 922(g)(1) constitutional as applied to a defendant who had prior convictions for car theft, evading arrest, and possessing a firearm as a felon. The Fifth Circuit reasoned that since theft was a felony at the time of the Founding, and since felonies at the time of the Founding were punishable by death, then the non-capital punishment of disarmament is also permissible. *Id*. at 469. The Fifth Circuit further noted the existence of other laws in place at the time of the Founding that disarmed "those who menaced others with firearms," "disrupted the 'public order,'" and pursued

actions that "le[d] almost necessarily to actual violence." *Id.* at 470–471 (quoting *Rahimi*, 602 U.S. at 697).

### B. Defendant's Challenges Under 18 U.S.C. § 922(g)(1).

The Court first analyzes Defendant's facial attack on 18 U.S.C. § 922(g)(1) and then turns to Defendant's as-applied challenge to same.

#### i. Defendant's Facial Attack on 18 U.S.C. § 922(g)(1) Fails.

The Court begins with Defendant's facial attack on 18 U.S.C. § 922(g)(1). The Fifth Circuit's decision in *Diaz* forecloses such an attack. To sustain a facial challenge, "the challenger must establish that no set of circumstances exists under which the statute would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In *Diaz*, the Fifth Circuit ruled that § 922(g)(1) was constitutional as applied to the defendant and thereby ruled that § 922(g)(1) is facially constitutional. *Diaz*, 116 F.4th at 472. Based on Fifth Circuit precedent, Defendant's facial attack on § 922(g)(1) fails.

#### ii. Defendant's As-Applied Challenge to 18 U.S.C. § 922(g)(1) Fails.

The Court turns to Defendant's as-applied challenge to 18 U.S.C. § 922(g)(1). Under *Bruen*, the Court must first ascertain whether the "Second Amendment's plain text covers [the] individual's conduct[.]" *Bruen*, 597 U.S. 1, 24 (2022). The Fifth Circuit applied this framework to § 922(g)(1) in *Diaz*. 116 F.4th at 458. *Diaz* considered the defendant's felon status in the second step of the *Bruen* analysis, collapsing the inquiry "into one question: whether the law is consistent with our

Nation's history of firearm regulation." *Id.* at 467 (citing *Rahimi*, 602 U.S. at 692). The Fifth Circuit held "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1) . . ." *Id.* Thus, the Government bears the burden to demonstrate that the application of § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." *Id.* (quoting *Bruen*, 597 U.S. at 24) (internal quotation marks omitted); *see also United States v. Quinn*, 779 F. Supp. 3d 831, 836 (M.D. La. 2025). More plainly, the Government must show there is a historical analogue for the application of § 922(g)(1) to Defendant.

The United States contends that there are historical analogues—namely, arson laws in place at or around the era of our Founding—that support the application of § 922(g)(1) to Defendant. (Doc. 38 at 6). The United States makes this analogy based on the similarity in definitions for the crimes of aggravated criminal damage to property, as defined by Louisiana statute, and arson. (*Id.* (citing La. R.S. 14:55(A) (2014) ("the intentional damaging of any structure . . . wherein it is foreseeable that human life might be endangered . . ."))). The United States further cites numerous authorities for the proposition that arson was a common-law felony punishable by death in England, (*Id.* (citing William Blackstone, *Commentaries on the Laws of England* 94–98, 221-223 (1769); Henry John Stephen, *Summary of the Criminal Law* 92-93 (1840))), and that these laws were carried over into many American colonies. (*Id.* (citing Stuart Banner, *The Death Penalty: An American History* 5 (2002) ("Treason, murder, manslaughter, rape, robbery, burglary, arson,

6

counterfeiting, theft—all were capital offenses in England. All became capital crimes in the American colonies as well.")))). Moreover, the United States points the Court to various state statutes from the time of the Founding that explicitly made arson a capital offense. *See* Act of Feb. 21, 1788, ch. 37, 1788 New York Laws, 11th Sess., 1st Mtg. 664; Act of Mar. 11, 1785, ch. 25, 1785 Mass. Acts & Laws, Jan. Sess. 253; Act of Feb. 21, 1767, ch. 557, 1766-1767 Penn. Acts 272.

The United States further argues that the facts underlying Defendant's predicate convictions demonstrate that he is dangerous and analogizes to founding-era going armed laws, which resulted in firearms disarmament for individuals like the Defendant "whose underlying convictions stemmed from the threat and commission of violence with a firearm." (Doc. 38 at 9 (quoting *United States v. Bullock,* 123 F.4th 183 (5th Cir. 2024))).

This Court has upheld indictments in the face of an as-applied attack on the constitutionality of a § 922(g)(1) charge supported, in part, by an underlying aggravated criminal damage to property conviction. *See United States v. Gray*, No. 23-CR-00105, 2025 WL 1970260 at *8 (M.D. La. July 16, 2025) (finding that the crime of aggravated criminal damage to property may be properly analogized to the founding-era crime of arson for the purposes of 922(g)(1) analysis, relying on the Fifth Circuit's reasoning in *Diaz* comparing the "why" and "how" of the historical analogues to § 922(g)(1) (116 F.4th at 469)). Founding-era going armed laws, the relevant historical analogue which supported disarmament in *Diaz,* have also been found as

7

sufficient historical analogues to the Louisiana offense of aggravated criminal damage to property to support the application of 922(g)(1) to a defendant. *See United States v. Debrow,* 2025 WL 449816 at *3 (W.D. La. Feb. 10, 2025); 116 F.4th 458. The Court agrees that Defendant's prior aggravated criminal damage to property conviction, "in which a van and an occupied home were shot at multiple times" (Doc. 38 at 8), is a dangerous offense sufficiently analogous to the historical offenses that going armed laws punished: "those who had menaced others with firearms." *Diaz,* 116 F.4th at 470-71.

Based on the authority described *supra* and the Fifth Circuit's ruling in *Bullock,* 123 F.4th 183, regarding the constitutionality of § 922(g)(1) as applied to a defendant with a conviction for a similarly dangerous and violent offense, the Court concludes that the United States has carried its burden under step two of the *Bruen* analysis to identify a historical analogue such that § 922(g)(1)'s application to Defendant, who has previously been convicted of an aggravated criminal damage to property offense, "fits neatly" within our Nation's history and tradition. *See Rahimi,* 602 U.S. at 698. The Court therefore concludes that § 922(g)(1) is constitutional as applied to Defendant and will deny Defendant's Motion.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion (Doc. 23)** be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 5th day of November, 2025

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**